# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JOHN E. BOYDSTON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:08CV1039 AGF |
| | ) |
| DAVE DORMIRE, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition for Writ of Habeas Corpus filed by Petitioner John E. Boydston, pursuant to 28 U.S.C. § 2254. Petitioner seeks relief from his conviction for second degree burglary. After reviewing the case, the Court has determined that Petitioner is not entitled to relief. As a result, the Petition will be denied.

## Background

The following are the facts of this case as recited by the Missouri Court of Appeals:

> [O]n July 21, 2003, [Petitioner] was a passenger in his girlfriend's car at the time she was arrested by Officer David Inman ("Officer Inman") for driving away from a gas station without paying for gasoline. Officer Inman testified that [Petitioner] was not arrested in relation to that incident. Officer Inman noted that he allowed [Petitioner] to leave the scene of the arrest and to take a black bag containing "[a] bunch of tattooing equipment" with him when he left.

Later that afternoon, [Petitioner] went to the Plum Crazy Bar ("the Bar") in Hayti, Missouri, which is an establishment owned by Hoot Graue ("Mr. Graue"). Mr. Graue testified that [Petitioner] told him that he was a tattoo artist and that he needed to earn some money to get his girlfriend out of jail. Mr. Graue said that [Petitioner] was still at the Bar when he closed at around 10:00 that evening. After closing the Bar, Mr. Graue set the security alarm and motion detector, locked the doors, and went home.

Shortly after he arrived home, the security alarm company called Mr. Graue and notified him that the alarm at the Bar had been activated. Mr. Graue met Officer Justin Brown ("Officer Brown") at the Bar and they discovered that several tiles had fallen from the ceiling; however, Officer Brown located no one inside the building. Mr. Graue reset the alarm and both Officer Brown and Mr. Graue left the Bar.

According to Mr. Graue, approximately fifteen or twenty minutes later he was again notified by the security alarm company that the alarm at the Bar had been activated. When he returned to the Bar, the police had not yet arrived on the scene. Mr. Graue unlocked the front door and entered the Bar. Mr. Graue saw [Petitioner] standing by the lottery ticket machine holding a crowbar. [Petitioner] said to Mr. Graue, "I'm sorry," and then he approached him with the crowbar in his hand. Mr. Graue grabbed a gun and shot [Petitioner] in the leg. [Petitioner] fell to his knees, dropped the crowbar, and then ran out the back of the building.

When police arrived, they were unable to find [Petitioner]. Inside the Bar, the police discovered some dislodged ceiling tiles; several missing louvers from the rear of the building near where the tiles were missing; the lottery ticket machine had been moved, pried open, and emptied of currency; the juke box had been scratched; the inside bottom corner of the back door was bent upward; a pillar was damaged by the bullet; and a trail of blood led toward the rear door of the building.

At some point in August of 2003, a police officer discovered a black bag full of tattooing equipment in a parking lot across the street from the Bar.

> The bag was turned over to the Hayti Police Department and it was later claimed by [Petitioner] several months after the burglary.

State v. Boydston, 198 S.W.3d 671, 673 (Mo. Ct. App. 2006) (footnote omitted).

Petitioner was convicted by a jury on one count of second degree burglary, a Class C felony. Id. at 672. The trial court found Petitioner to be a prior and persistent offender, and sentenced him to twelve years' imprisonment. Id.

Petitioner raised one point on direct appeal: that the trial court erred when it admitted into evidence the crowbar purportedly used in the burglary and found at the scene of the crime. Id. The Missouri Court of Appeals found that Petitioner had failed to preserve the issue for appeal, and the court declined to review the claim for plain error. Id. at 675.

Petitioner filed a pro se Rule 29.15 motion, and counsel filed a superseding amended motion. In the amended motion, Petitioner claimed that counsel was ineffective for failing to call Petitioner to testify at trial and for waiving Petitioner's motion for a change of judge and venue without Petitioner's consent. Resp. Exh. I at 14-16. The motion court denied relief after holding an evidentiary hearing. Id. at 40-47.

Petitioner filed an appeal, reasserting these same two points, namely: (1) that the motion court erred in denying his motion for post-conviction relief because trial counsel

was ineffective for failing to call him to testify in his defense and (2) that the motion court erred in denying his motion for post-conviction relief because trial counsel was ineffective for waiving his motion for change of judge and venue without his knowledge or consent. Resp. Exh. L at 2. The court analyzed the claims under Strickland and found both that trial counsel acted reasonably and that Petitioner was not prejudiced by counsel's performance. Id. at 7-9.

Petitioner is currently incarcerated at the Jefferson City Correctional Center. Dave Dormire is the Warden of that institution.

## Grounds for Relief

The Petition raises the following grounds for relief:

1. Petitioner claims that he is actually innocent and that the crime scene investigation was defective.

2. The trial court erred when it sustained the State's motion in limine and prohibited Petitioner from presenting certain evidence.

3. The prosecutor engaged in misconduct by disallowing RICO evidence regarding Graue, by making improper statements to the jury, by using perjured testimony relating to how police found his bag of tattooing equipment, by cutting off a juror during her answer about who she knew, by asking "singular" questions during voir dire, and by reminding the jury members of their duties throughout the trial.

4. Trial counsel was ineffective for failing to have a trial strategy, for refusing to put on a defense that Petitioner was framed for the offense and that Graue staged the robbery, and for failing to cross-

examine a police officer witness about how he found Petitioner's bag of tattoo equipment.

Respondent asserts that Petitioner's stand-alone claim of actual innocence is not cognizable, and that the remaining grounds are procedurally defaulted and lack merit.

**Actual Innocence Claim**

In the procedural default context, the "actual innocence" gateway is satisfied where the Petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993).

In this case, Petitioner has not come forward with any newly discovered evidence demonstrating that he is actually innocent of the crime for which he was convicted. Nor has he demonstrated that an independent constitutional violation occurred during the underlying proceedings. As a result, Petitioner is not entitled to relief on ground one of the Petition.

**Procedural Default**

To avoid defaulting on a claim, a Petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a Petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Id. at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. Id. at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the Petitioner can demonstrate cause and prejudice for the default. Id.

None of the claims brought in grounds two, three, or four were presented to the state courts. Petitioner has failed to demonstrate, or even argue for, cause and prejudice for the default. As a result, Petitioner is not entitled to relief on grounds two, three, or four of the Petition.

## Conclusion

For these reasons, Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a Certificate of Appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 26th day of August, 2011.

                                                   */s/ Audrey G. Fleissig*
                                                   AUDREY G. FLEISSIG
                                                   UNITED STATES DISTRICT JUDGE